IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TELESFORO ALVARADO,<br><br>Petitioner,<br><br>vs.<br><br>BRAD HANSEN, Warden et. al.;<br><br>Respondent.[1] | 8:17CV283<br><br>**MEMORANDUM<br>AND ORDER** |

This matter is before the court on Respondent's Motion for Summary Judgment.[2] (Filing No. 16.) Respondent argues that Petitioner Telesforo Alvarado's Petition for Writ of Habeas Corpus (Filing Nos. 1, 5) must be dismissed because it is barred by the limitations period set forth in 28 U.S.C. § 2244(d). The court agrees and will dismiss the petition with prejudice.

---

[1] Alvarado is currently on parole. (*See* Nebraska Department of Correctional Services website at http://dcs-inmatesearch.ne.gov/Corrections/InmateDisplay Servlet?DcsId=77846 (noting released on discretionary parole on April 18, 2018); Filing No. 28.) Although Alvarado has been released from physical custody, his petition has not been rendered moot. *See Jones v. Cunningham*, 371 U.S. 236 (1963) ("The imposition of parole conditions confine and restrain a habeas corpus petitioner to an extent sufficient to keep him in 'custody' for purposes of 28 U.S.C. § 2254."); *Richter v. Bartee*, 938 F. Supp. 572, 574 (D. Neb. 1996) (petitioner on parole remained "in custody").

[2] Also before the court are Alvarado's "Request to Withdraw Ground Nine of Habeas Petition and Request to Stay [and] Abey Ground Nine of Habeas Petition" (Filing No. 23 (capitalization corrected)), "Motion for Leave to Submit Evidence Disputing Facts in Respondent's Opposition Brief to Motion to Withdraw Ground Nine of Habeas Petition" (Filing No. 27 (capitalization and punctuation corrected)), and "Motion to Correct Statement Made and to Submit Evidence in Support of Argument Made in His Motion Disputing Respondent's Opposition Brief" (Filing No. 30 (capitalization and punctuation corrected)).

# I. BACKGROUND

## A. Conviction and Direct Appeal

Alvarado was convicted of one count of distribution of a controlled substance within 1000 feet of a playground following a jury trial in the Scotts Bluff County District Court. (Filing No. 5 at CM/ECF pp. 14-15; Filing No. 17-1 at CM/ECF pp. 1, 9, 11.) The state district court sentenced Alvarado to eight to twenty years' imprisonment. (Filing No. 5 at CM/ECF p. 14; Filing No. 17-1 at CM/ECF pp. 1, 8, 11.) On April 15, 2014, the Nebraska Court of Appeals affirmed Alvarado's conviction and sentence on direct appeal. (Filing No. 17-2 at CM/ECF p. 2.) On June 4, 2014, the Nebraska Supreme Court denied Alvarado's petition for further review. (*Id.*) The mandate was issued on June 25, 2014 (*Id.*) The state district court spread the mandate on July 1, 2014. (Filing No. 17-1 at CM/ECF pp. 7, 11.)

## B. Postconviction Motion

On March 30, 2016, Alvarado filed a motion for postconviction relief in the state district court. (Filing No. 17-1 at CM/ECF p. 6.) On August 15, 2016, Alvarado filed a supplemental verified motion for postconviction relief. (*Id.*) On February 3, 2017, the state district court dismissed Alvarado's motion as barred by the one-year limitations period under Neb. Rev. Stat. § 29-3001(4). (Filing No. 5 at CM/ECF p. 150; Filing No. 17-1 at CM/ECF p. 5.)

Alvarado appealed the dismissal of postconviction relief to Nebraska's appellate courts. On April 19, 2017, the Nebraska Court of Appeals dismissed the appeal for lack of jurisdiction pursuant to Neb. Ct. R. App. P. § 2-107(A)(2) due to Alvarado's failure to execute his poverty affidavit no more than 45 days prior to the filing of the notice of appeal. (Filing No. 17-3 at CM/ECF p. 2.) The Nebraska Supreme Court denied Alvarado's petition for further review on June 6, 2017, and issued its mandate on July 28, 2017. (*Id.*)

**C. Habeas Petition**

Alvarado filed his Petition for Writ of Habeas Corpus in this court on August 1, 2017. (Filing No. 1.) He filed an Amended Petition for Writ of Habeas Corpus on August 29, 2017. (Filing No. 5.) Thereafter, Respondent moved for summary judgment (Filing No. 16), arguing the habeas petition is barred by the statute of limitations (Filing Nos. 16, 18). Alvarado filed a brief (Filing No. 21) in opposition to Respondent's motion, and Respondent filed a reply brief (Filing No. 22). This matter is fully submitted for disposition.

Alvarado also filed a "Request to Withdraw Ground Nine of Habeas Petition and Request to Stay [and] Abey Ground Nine of Habeas Petition." (Filing No. 23.) After Respondent filed a brief (Filing No. 26) in opposition to Alvarado's motion, Alvarado filed a "Motion for Leave to Submit Evidence Disputing Facts in Respondent's Opposition Brief to Motion to Withdraw Ground Nine of Habeas Petition" (Filing No. 27) and a "Motion to Correct Statement Made and to Submit Evidence in Support of Argument Made in His Motion Disputing Respondent's Opposition Brief" (Filing No. 30).

## II. ANALYSIS

**A. One-Year Limitations Period**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposed a one-year statute of limitations on petitions for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. 28 U.S.C. § 2244(d)(1). 28 U.S.C. § 2244(d) states:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Here, absent a later triggering date under 28 U.S.C. § 2244(d)(1)(B)-(D), Alvarado's conviction became final on September 2, 2014, which is ninety days after the Nebraska Supreme Court denied a petition for further review of his direct appeal. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (holding that, for petitioners who do not pursue direct review all the way to the United States Supreme Court, a judgment becomes final "when the time for pursuing direct review in [the Supreme Court], or in state court, expires."); *King v. Hobbs*, 666 F.3d 1132, 1135 (8th Cir. 2012) ("If the Supreme Court has jurisdiction to review the direct appeal, the judgment becomes final ninety days after the conclusion of the prisoner's direct criminal appeals in the state system.") (citing Sup. Ct. R. 13.1). Accordingly, the one-year limitations period began to run from September 2, 2014.

Alvarado's filing of his motion for postconviction relief in state district court on March 30, 2016, did not toll the limitations period because it had already expired.

4

See *Painter v. Iowa*, 247 F.3d 1255, 1256 (8th Cir. 2001) (holding "the time between the date that direct review of a conviction is completed and the date that an application for state post-conviction relief is filed counts against the one-year period"). Thus, Alvarado had until September 2, 2015, to file his habeas petition. He did not file it until August 1, 2017. Alvarado's habeas petition is untimely under § 2244(d)(1)(A).

## B. State-Created Impediment and Equitable Tolling

Alvarado contends that his lack of access to the law library, legal aides, and legal resources as a protective custody inmate at the Lincoln Correctional Center ("LCC") and his appellate counsel's failure to file an application for state post-conviction relief postponed the commencement of the AEDPA's limitations pursuant to 28 U.S.C. § 2244(d)(1)(B) or the principles of equitable tolling. Alvarado proposes that the one-year limitations period commenced not on September 2, 2014, but either on February 3, 2016—the date he was transferred to Tecumseh State Correctional Institution ("TSCI") and the impediment at the LCC was removed—or July 20, 2015—the date he sent the last of three certified letters to his appellate counsel informing him that "he accepted that [counsel] officially withdrew from his case." (Filing No. 21 at CM/ECF pp. 5, 8, 16.)

### 1. State-Created Impediment

28 U.S.C. § 2244(d)(1)(B) postpones the commencement of the AEDPA's limitations period during the time a state-created unconstitutional "impediment" prevents a petitioner from filing a habeas corpus petition. In other words, 28 U.S.C. § 2244(d)(1)(B) allows an application for a writ of habeas corpus to be filed in federal court within one year from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action."

5

Alvarado argues that the limitations period set forth in 28 U.S.C. § 2244(d)(1)(B) applies because his lack of access to the law library, legal resources, and legal aides or assistance as a protective custody inmate at the LCC was a state-created impediment. Summarized and condensed, Alvarado argues that his habeas petition ought not be dismissed because (1) he was in protective custody at the LCC, which meant beginning in 2014, he had no access to the law library or law library resources and materials; (2) it was not until December 2015 that the LCC "finally posted a notice allowing [protective inmates] the ability to check out legal self-help books"; (3) a LexisNexis computer was not installed until late 2014 or early 2015, which he was only able to use for one hour per week and which he was "illiterate" and "forced to navigate . . . with no assistance"; (4) LCC protective custody inmates were not allowed "one on one consultations with inmate legal aides"; and (5) LCC protective inmates could only ask legal questions via the kite process, "which resulted in conflicting, unreliable and delayed repl[ies]."[3] (Filing No. 21 at CM/ECF pp. 2, 5.) The court rejects this argument.

Preliminarily, the court notes that Alvarado's petition and opposition brief focus largely on alleged impediments to filing his state postconviction motion. The language of § 2244(d)(1)(B), however, concerns impediments to the pursuit of *federal habeas relief*, not state postconviction relief. As such, the court will address the merits of Alvarado's impediment argument only in the context of his federal habeas petition.

"[P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Lewis v. Casey*, 518 U.S. 343, 351, (1996) (quoting *Bounds v. Smith*, 430 U.S. 817, 825 (1977)); *accord Finch v. Miller*, 491 F.3d 424 (8th Cir. 2007). "Moreover, an inmate who alleges an access violation is required to show actual injury." *Cody v. Weber*,

---

[3] All quotations contain corrections to spelling, capitalization, and punctuation.

256 F.3d 764, 768 (8th Cir. 2000). Because there is not "an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis*, 518 U.S. at 351. The Eighth Circuit has held that "[t]he plain language of the statute makes clear that whatever constitutes an impediment must prevent a prisoner from filing his petition." *Earl v. Fabian*, 556 F.3d 717, 726 (8th Cir. 2009).

Alvarado's contention that he did not have access to legal aides or assistance or legal resources as a protective custody inmate at the LCC is undermined by evidence submitted by Respondent showing that the LCC has clearly written policies governing inmates' rights regarding access to legal services and materials. (Filing No. 17-4; Filing No. 17-5 at CM/ECF pp. 6-10; Filing No. 17-6 at CM/ECF pp. 5-6). The policies specifically provide that protective custody inmates are permitted "access to the LexisNexis computer located on the unit for one hour a week by sending an Inmate Interview Request to their Unit Manager" and "may request to see an inmate Legal Aide up to one hour per week by writing an Inmate Interview Request to the Librarian. Such assistance may include arranging for law books to be checked out to . . . protective custody inmates from the law library." (Filing No. 17-5 at CM/ECF p. 9, LCC Operational Memorandum, Inmate Rights, No. 116.01.01, Section (IV)(C)(9)(c)(4)(e).) Protective custody inmates have access to the following legal materials: "Black's Law Dictionary, Post Conviction Remedies: A Self-Help Manual, Prisoner's Self-Help Litigation Manual by Boston and Manville and Legal Research: How to Find and Understand the Law." (Filing No. 17-6 at CM/ECF p. 5, LCC Operational Memorandum, Library Services, No. 107.01.01, Section (IV)(B)(4)(e).) The policy provides instructions on how inmates may request these books.[4] (*Id.*)

---

[4] Alvarado argues that these policies are not applicable because they are dated March 31, 2017, and October 31, 2017, respectively, which is after he was transferred from the LCC to TSCI. (Filing No. 21 at CM/ECF p. 2.) Those dates, however, refer to revision dates of only certain provisions of the policies. The 2017

7

Considering the LCC policies mentioned just above, Alvarado fails to adequately explain how the LCC prevented him from working on his habeas petition. Moreover, it is clear from the documents submitted by Alvarado (and from his own allegations) that, during the one-year limitations period set forth in § 2244(d)(1), he had access to various legal forms (upon request and with proper payment) (Filing No. 21-6 at CM/ECF pp. 7-9); was allowed to check out books from the law library[5];

---

revisions either involve provisions to the policies that are not applicable here or do not substantively change the relevant provisions. (Filing No. 17-5 at CM/ECF pp. 1, 9; Filing No. 17-6 at CM/ECF pp. 1, 5.) Indeed, the only relevant October 31, 2017 revision to LCC Operational Memorandum, Inmate Rights, No. 116.01.01, was to change the term "Protective Custody" to "Protective Management." (Filing No. 17-5 at CM/ECF p. 1.) And, the March 31, 2017 revisions to the LCC Operational Memorandum, Library Services, No. 107.01.01, do not concern any of the relevant provisions here. (Filing No. 17-6 at CM/ECF p. 1.) Beyond his own allegations, Alvarado does not provide any evidence showing that the LCC policies allowing protective custody inmates access to law books, the LexisNexis computer, and legal aides or assistance were not effective during the one-year AEDPA limitation period.

[5] In a kite dated December 30, 2015, which was after the one-year limitations period expired, Alvarado wrote:

> Today when I was using the [LexisNexis] computer there was an operational memorandum that was just recently placed in the A-unit [protective custody unit] law library catalog. It was not in there 3 weeks ago. Anyhow, in that memorandum it said [protective custody inmates] were allowed to check out a book of post-conviction remedies and a self-help manual book. I'm respectfully asking to check out these books.

(Filing No. 21-6 at CM/ECF p. 13.) The response states in relevant part: "This policy has been in place for quite some time. You may request several legal books [naming specific books]. Please send another IIR to let us know which books you would like to check. . . ." (*Id.*) The latest possible revision date to the relevant section in the LCC Operational Memorandum, Library Services, No. 107.01.01, would have been March 31, 2015, which was within the one-year AEDPA limitations period. (Filing No. 17-6 at CM/ECF p. 1.) Thus, the evidence indicates that the policy allowing protective custody inmates to check out legal books was in effect during the AEDPA one-year limitations period. Whether Alvarado knew about the policy and took

received legal assistance (for example, responding to his questions about filling out an application for in forma pauperis and requesting appointment of counsel related to his postconviction motion) (Filing No. 21-6 at CM/ECF pp. 7-9); and was using the LexisNexis computer (Filing No. 21-6 at CM/ECF p. 10). The absence of persons available to teach Alvarado how to use the LexisNexis computer does not constitute the kind of "impediment" contemplated by 28 U.S.C. § 2244(d)(1)(B). *See Dean v. Houston*, No. 4:05CV3124, 2006 WL 83103, at *4 (D. Neb. Jan. 12, 2006) (unpublished). Furthermore, Respondent has no obligation to actively assist him in filing his claims. *See Jackson v. Bitten*, No. 4:08CV3155, 2009 WL 1209462, at *4 n.1 (D. Neb. Apr. 28, 2009) (unpublished).

Alvarado does not present evidence that LCC prison officials denied him access to his legal materials,[6] legal forms,[7] and the opportunity to prepare legal documents. Nor is there evidence that he requested LCC prison officials to give him special time allowance for research and preparation of documents to meet an imminent court deadline, or that any such requests were refused by the prison officials. Finally, he does not allege that the action of LCC officials in housing him in protective custody was in violation of the Constitution or laws of the United States. In fact, Alvarado requested to be placed in protective custody because he had reconstructive jaw surgery. (Filing No. 5 at CM/ECF p. 27 ("[O]ne punch to his jaw area would prove fatal . . . .").) Because Alvarado has not presented any evidence that Respondent prevented his access to legal resources, legal aides, or the courts, he has failed to demonstrate an impediment, created by governmental action in

---

advantage of it during this time is not relevant to whether it constituted a state-created impediment.

[6] Although there was a delay in completing Alvarado's request for copies of "legal papers" and a letter to appellate counsel related to his state postconviction motion, the record reflects that the copies were completed on March 12, 2015 (Filing No. 21-6 at CM/ECF p. 2), which was within the AEDPA one-year limitations period.

[7] The evidence does not reflect that Alvarado ever requested federal habeas forms. The kites submitted by Alvarado relate to his state postconviction motion.

violation of the Constitution or laws of the United States, which prevented him from making a timely habeas petition.

Even assuming that the one-year limitations period did not commence until February 3, 2016—the date Alvarado was transferred to TSCI and the alleged impediment at the LCC was removed—Alvarado's federal habeas petition would still be untimely, because it was not filed until August 2017, over one year later. Alvarado's state postconviction motion would not have tolled any of the limitations period, because it was untimely and thus not properly filed, and a state court's determination that the petition was untimely is conclusive on a federal habeas court. *See Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (a habeas petitioner's state postconviction motion which was rejected by the state court as untimely under the state statute of limitations was not "properly filed," within the meaning of AEDPA's statutory tolling provision, stating: "When a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)." (citation omitted)).

### 2. Equitable Tolling

The court now turns to Alvarado's argument that he is entitled to equitable tolling. Generally, a litigant seeking equitable tolling must establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Walker v. Norris*, 436 F.3d 1026, 1032 (8th Cir. 2006); *see also Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir. 2000) ("Equitable tolling is proper only when extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time.'), *cert. denied*, 534 U.S. 863 (2001). The Eighth Circuit has reiterated, with respect to equitable tolling of the deadline for § 2254 petitions, "that '[a]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes.'" *Cross-Bey v. Gammon*, 322 F.3d 1012, 1015 (8th Cir. 2003) (citation omitted).

Alvarado has not demonstrated that he pursued his rights diligently. All of his § 2254 habeas claims were available to him at the time his conviction became final.[8]

---

[8] Claims 10 and 11 concern (1) impediments to the filing of his habeas petition created by State action and (2) equitable tolling based on the conduct of Alvarado's appellate counsel in failing to file a postconviction action in state court. Although these "claims" involve events that occurred after his conviction became final, they are not "claims," but are arguments for excusing his untimely filing of his habeas petition. Furthermore, ineffective assistance of postconviction counsel is not a free-standing claim cognizable on federal habeas review. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (ineffective assistance or "abandonment" of postconviction counsel does not give rise to a free-standing constitutional claim, because there is no right to counsel in collateral-review proceedings); *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (there is no constitutional right to an attorney in state postconviction proceedings), *holding modified by Martinez v. Ryan*, 566 U.S. 1 (2012) (*Martinez* announced an equitable modification of *Coleman* to excuse, in limited circumstances, the procedural default of ineffective-trial-counsel claims when post-conviction counsel was ineffective for failing to raise the claims in the state proceedings. *Martinez* did not, however, create a freestanding claim for habeas relief based on the alleged ineffective assistance of state postconviction counsel); *Christenson v. Ault*, 598 F.3d 990, 995-96 (8th Cir. 2010) ("There is no federal constitutional right to the effective assistance of post-conviction counsel.") (citation omitted); *Mack v. Caspari*, 92 F.3d 637 (8th Cir. 1996) (abandonment by postconviction counsel is not a cognizable claim for habeas relief). As such, Alvarado cannot argue that these were "claims" not available to him at the time his conviction became final.

In addition, claim 9, which concerns an alleged ex parte communication that occurred during the jury trial in February 2013 and which is the subject of Alvarado's motion to stay and abey, was available to him at the time of his conviction. The document at issue (i.e., "Judge's Note") has been in the state district court case file since April 12, 2013, and was included in the transcript filed with the Nebraska Court of Appeals during Alvarado's direct appeal. (Filing No. 17-1 at CM/ECF p. 8; Filing No. 25-1 at CM/ECF pp. 34-35.) Therefore, although Alvarado contends that he did not discover the ex parte communication until March 15, 2017 (Filing No. 23 at CM/ECF p. 1), the document was a matter of public record and could have been discovered by Alvarado through due diligence well before his state

Yet he waited almost three years after his conviction became final before initiating this § 2254 action. Alvarado argues that the limitations period was missed "through no fault of [his] nor for [his] lack of diligence" but rather because appellate counsel "lied and deceived" him through "a series of letters that he would draft and file" his "postconviction motion." (Filing No. 21 at CM/ECF pp. 6, 11.) According to Alvarado, appellate counsel

> abandoned [him] without notice, without an explanation, without a replacement of counsel, without a referral to a different counsel, without giving me any directives on law to proceed, without giving [him] adequate time to pursue other options to file [his] postconviction within the time limits, without returning [his] files or documents, without giving [him] a refund, without responding to [his] last three certified letters to him and most importantly without making [him] aware of the one year statute of limitation even after [he] asked him what the [state court direct-appeal] mandate he mailed [him] was.

(Filing No. 21 at CM/ECF pp. 6, 11-12.)

Notably, Alvarado's argument focuses largely on his efforts related to his state postconviction motion: "there has never been any lack of diligence on [his] part at any relevant stages in *state court* proceedings." (*Id.* at 10 (emphasis added).) The fact that he was trying to pursue postconviction relief in state court during this time—including trying to find replacement counsel—does not excuse him from diligently taking the necessary steps to preserve and timely file his federal habeas claims. *See Pace*, 544 U.S. at 416 (refusing to apply equitable tolling during period that petitioner was "trying in good faith to exhaust state remedies," and observing that petitioner could have filed a "protective" habeas petition in federal court); *Gordon v. Arkansas*, 823 F.3d 1188, 1195 n.4 (8th Cir. 2016) (refusing to apply equitable tolling to period petitioner was attempting to exhaust state-court remedies).

---

postconviction motion was dismissed on February 3, 2017. *See* 28 U.S.C. § 2244(d) ("the date on which the factual predicate of the claim or claims presented *could have been* discovered through the exercise of due diligence").

Even assuming Alvarado had acted diligently in pursuing his claims, he has not established that extraordinary circumstances prevented him from filing his habeas corpus petition. The Eighth Circuit has made it clear that equitable tolling is not justified by a petitioner's pro se status, lack of legal knowledge or legal resources, or any confusion about the federal limitations period or state postconviction law. *See, e.g.*, *Johnson v. Hobbs*, 678 F.3d 607, 611 (8th Cir. 2012); *Earl*, 556 F.3d at 724-25 ("[L]ack of access to legal resources does not typically merit equitable tolling."); *Runyan v. Burt*, 521 F.3d 942, 945-46 & n.4 (8th Cir. 2008) (petitioner's failure to comply with state filing requirements and failure to file protective federal habeas petition); *Finch*, 491 F.3d at 427-28 (petitioner's filing of three improper state post-conviction applications); *Jackson v. Ault*, 452 F.3d 734, 736-37 (8th Cir. 2006) (petitioner's attempt to obtain state postconviction counsel); *Shoemate v. Norris*, 390 F.3d 595, 597-98 (8th Cir. 2004) (petitioner's misunderstanding of state postconviction procedures); *Baker v. Norris*, 321 F.3d 769, 772 (8th Cir. 2003) ("Prisoners are not exempt from the principle that everyone is presumed to know the law and is subject to the law whether or not he is actually aware of the particular law of which he has run afoul."); *Cross-Bey*, 322 F.3d at 1015 (pro se prisoner's lack of legal knowledge did not suffice for equitable tolling); *Jihad v. Hvass*, 267 F.3d 803, 805-07 (8th Cir. 2001) (petitioner's inability to obtain state postconviction counsel, fact that petitioner wrote letters to trial judge inquiring about procedures for filing for postconviction relief, and counsel's delay in sending petitioner his trial transcript); *see also Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007) (no equitable tolling due to confusion about the law, court-appointed counsel's miscalculation, or petitioner's alleged mental incapacity); *Pace*, 544 U.S. at 418-19 (no tolling due to "trap" created by postconviction laws, where petitioner did not diligently seek state and federal relief).

As illustrated by the cases cited above, any obstacles faced by Alvarado (such as ignorance of the law, lack of understanding of the remedies available to him, lack of notice concerning the AEDPA statute of limitations, difficulty with appellate counsel, and inability to retain replacement state postconviction counsel) were certainly not extraordinary when measured according to those encountered by a

typical prisoner who prosecutes a pro se federal habeas petition. Regardless of any uncertainty about his state court proceedings—including uncertainty over whether appellate counsel was going to prepare and file his state court postconviction motion—nothing impeded Alvarado from filing a concurrent, protective habeas petition with the federal courts within the one-year time period. Furthermore, the alleged misconduct or ineffectiveness of Alvarado's appellate counsel had little to no bearing on Alvarado's ability to file a timely federal habeas petition. *See Randle v. Crawford*, 604 F.3d 1047, 1055, 1058 (9th Cir. 2010) (state-appointed appellate counsel's failure to perfect direct appeal and incorrect advice regarding pursuit of state habeas relief did not justify equitable tolling because counsel's alleged negligence "had little to no bearing on [petitioner's] ability to file a timely federal habeas petition"). Indeed, there is no evidence that Alvarado's counsel was retained to file a federal habeas petition or even indicated that he would prepare and file a federal habeas petition. Rather, the original contract for legal services covered only state court proceedings: (1) the motion for new trial, (2) sentencing, and (3) the initial direct appeal to the Nebraska Court of Appeals. (Filing No. 21-2 at CM/ECF pp. 1-2.) No additional legal services were covered. Moreover, none of the correspondence between Alvarado and his counsel mentions a federal habeas petition.[9] (Filing No.

---

[9] The correspondence does, however, indicate that appellate counsel told Alvarado that he intended to prepare and file Alvarado's state court postconviction motion. Specifically, on March 24, 2015, appellate counsel stated: "I will use the material that you provided to complete your Petition for Post-Conviction Relief which should go out to you by certified or express mail by Monday the 30th. Please review and sign and return the documents to me ASAP by certified mail." (Filing No. 21-4 at CM/ECF p. 1.) There is also an invoice from appellate counsel dated September 5, 2014, in which he charged Alvarado for .75 hours spent on "Letter to Client, Prep Petition-Post-Conviction Relief Documents." (Filing No. 21-2 at CM/ECF p. 6.) Apparently, Alvarado never received the postconviction documents and appellate counsel did not further correspond with Alvarado, even after Alvarado sent him several certified letters. In a letter dated July 20, 2015, Alvarado told appellate counsel that he accepted that appellate counsel was withdrawing from his case. (Filing No. 21-5 at 2.) Thus, even assuming Alvarado initially believed his counsel was going to file a federal habeas petition in addition to a state court postconviction motion, Alvarado knew by July 20, 2015—which falls within the

14

21-4). Thus, the evidence demonstrates that Alvarado solely was responsible for filing any federal habeas petition and the alleged ineffectiveness of his appellate counsel is irrelevant to whether his federal habeas petition was filed in a timely manner.

Furthermore, ineffective assistance of counsel, "where it is due to an attorney's negligence or mistake, has not generally been considered an extraordinary circumstance" warranting the tolling of the statute of limitations. *United States v. Martin*, 408 F.3d 1089, 1093 (8th Cir. 2005) (citing *Beery v. Ault*, 312 F.3d 948, 951 (8th Cir. 2002), *cert. denied*, 539 U.S. 933 (2003)). *Accord Taliani v. Chrans*, 189 F.3d 597, 598 (7th Cir. 1999) ("[F]orcing the defendant to defend against the plaintiff's stale claim is not a proper remedy for negligence by the plaintiff's lawyer."). The Eighth Circuit has acknowledged, though, that serious attorney misconduct, as opposed to mere negligence, might warrant equitable tolling in cases where the petitioner is claiming gross negligence of counsel retained to file the habeas petition. *See, e.g.*, *Martin*, 408 F.3d 1093-95. As noted above, however, there is no evidence that Alvarado's appellate counsel was retained to file a federal habeas petition.

To the extent Alvarado looks to *Martinez*,[10] to support his argument that appellate counsel's misconduct or ineffectiveness in his state postconviction proceedings was an "extraordinary circumstance" that justifies equitable tolling, his reliance is misplaced. While *Martinez* changed the law regarding federal habeas review of procedurally defaulted claims, courts have not extended the reasoning in *Martinez* to excuse untimely petitions. Stated another way, the lack or ineffectiveness of counsel during postconviction collateral proceedings is not an

---

one-year AEDPA limitations period—that he would have to prepare and file any state postconviction motion and federal habeas petition on his own.

[10] In *Martinez*, the United States Supreme Court expressly declined to hold that there is a constitutional right to counsel in initial-review, state post-conviction proceedings. 566 U.S. at 8-9, 14-16.

15

"extraordinary circumstance" that warrants equitable tolling of the statute of limitations in § 2254 habeas actions. *See Lombardo v. United States*, 860 F.3d 547, 555-61 (7th Cir. 2017) (court declined to recognize *Martinez*'s framework as a means of establishing extraordinary circumstances for the purposes of equitable tolling); *Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) (holding that the *Martinez* rule does not apply to the one-year limitations period in § 2254 cases or any potential tolling of that period); *Parkhurst v. Wilson*, 525 F. App'x. 736, 738 (10th Cir. 2013) (*Martinez* does not provide a basis for equitable tolling); *Smith v. Hobbs*, 2014 WL 2718698, at *2 (E.D. Ark. May 15, 2014) (*Martinez* holding is not an extraordinary circumstance that would justify equitable tolling; "[w]hether a claim is procedurally defaulted is a completely distinct question from whether it is barred by the . . . statute of limitations"). Because *Martinez* provides no basis for extending the limitations period, Alvarado is not entitled to any equitable tolling.

**C. Motion to Withdraw and Stay and Abey Claim 9**

Because the petition is time barred, it must be dismissed. For this reason, Alvarado's "Request to Withdraw Ground Nine of Habeas Petition and Request to Stay [and] Abey Ground Nine of Habeas Petition" (Filing No. 23) is denied as moot. *See Rhines v. Weber*, 544 U.S. 269, 275 (2005) (*Rhines* stay can apply only to timely filed petition containing exhausted and unexhausted claims); *Parmley v. Norris*, 586 F.3d 1066, 1073 (8th Cir. 2009) ("Because the stay-and-abeyance procedure for mixed habeas petitions is limited to timely petitions, *see* [*Rhines*, 544 U.S.] at 275 125 S. Ct. 1528, our conclusion that Parmley's petition was untimely renders the stay-and-abeyance issue moot."). Alvarado's motions (Filing No. 27; Filing No. 30) related to his stay and abey motion are also denied as moot.

### III. CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his or her petition for writ of habeas corpus under § 2254 unless he or she is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The

standards for certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set forth in *Slack v. McDaniel*, 529 U.S. 473, 484-485 (2000). The court has applied the appropriate standard and determined Petitioner is not entitled to a certificate of appealability.

IT IS THEREFORE ORDERED that:

1. Respondent's Motion for Summary Judgment (Filing No. 16) is granted.

2. Petitioner's habeas petition (Filing Nos. 1, 5) is dismissed with prejudice, and the court will not issue a certificate of appealability in this matter.

3. Petitioner's "Request to Withdraw Ground Nine of Habeas Petition and Request to Stay [and] Abey Ground Nine of Habeas Petition" (Filing No. 23), "Motion for Leave to Submit Evidence Disputing Facts in Respondent's Opposition Brief to Motion to Withdraw Ground Nine of Habeas Petition" (Filing No. 27), and "Motion to Correct Statement Made and to Submit Evidence in Support of Argument Made in His Motion Disputing Respondent's Opposition Brief" (Filing No. 30) are denied as moot.

4. The court will enter a separate judgment in accordance with this order.

Dated this 22nd day of August, 2018.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge